NOT DESIGNATED FOR PUBLICATION

No. 116,565

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DONALD MARCELLOUS DEXTER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed December 1, 2017. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Jennifer S. Tatum*, assistant district attorney*, Mark A. Dupree, Sr.,* district attorney, and *Derek Schmidt,* attorney general, for appellee.


Before MALONE, P.J., LEBEN, J., and KEVIN P. MORIARTY, District Judge, assigned.


LEBEN, J.: Donald Dexter appeals the district court's denial of his motion to withdraw his guilty plea to aggravated battery. The district court has the discretion to allow plea withdrawal before sentencing, and Dexter contends that he showed good cause to do so based on mental illness and a fear that if he didn't plead guilty, he might be confined to a state mental hospital.

We review the district court's denial of a motion to withdraw plea for abuse of discretion, and that occurs only when the district court based its decision on an error of

fact or law or when its decision is so unreasonable that no reasonable person would agree with it. Here, the district court who presided over Dexter's plea hearing also heard testimony from Dexter and his attorney. Based on that testimony, the court concluded that Dexter understood his plea agreement and knowingly entered into it.

The district court's conclusions are reasonable and based on the evidence it heard. We therefore affirm its judgment.

FACTUAL AND PROCEDURAL BACKGROUND

According to a detective's affidavit, the charge against Dexter arose after he stabbed his brother while both were passengers in a moving vehicle. A sheriff's deputy reported that Dexter's brother had some lacerations on his neck and a three-inch stab wound on his arm. The driver said Dexter's brother hadn't done anything to provoke the attack.

Before a plea was entered, defense counsel asked to have Dr. Robert Barnett evaluate the defendant to determine whether he was suffering from any mental illness or defect at the time the offense was committed. See K.S.A. 22-3219(1). Had the case gone to trial, that might have been used as a defense—claiming that he lacked the mental capacity to have "knowingly" committed the crime. See K.S.A. 2016 Supp. 21-5413(b). Although Dr. Barnett did evaluate Dexter's mental condition, the defense ultimately made no attempt to claim mental illness or defect as a defense to the criminal charge.

Instead, Dexter pled guilty. Under a plea agreement, in exchange for Dexter's guilty plea, the State agreed to support a shorter sentence than called for under our state's sentencing guidelines. The parties agreed to a 94-month sentence reduction if Dexter's criminal-history score turned out to be A or B, the two most serious categories. Based on a presentence-investigation report, Dexter's score was a B, so the parties recommended to

2

the court that he receive a sentence of 60 months rather than the standard guideline sentence of 154 months. The court adopted that recommendation when it sentenced Dexter.

But before sentencing, Dexter sought to withdraw his guilty plea. He raised several issues, but we will note only the two mentioned in his appellate brief: (1) that his mental health was insufficient for him to have sufficient understanding of what he was doing and (2) that he didn't enter the plea voluntarily because he was afraid if he didn't enter the plea he might be sent indefinitely to a mental hospital.

After Dexter filed this motion, the district court appointed a new attorney to represent him. The court then heard testimony from Dexter and his former attorney about the circumstances under which Dexter had pled guilty. The same judge handled the plea hearing, the hearing on the motion to withdraw plea, and the sentencing in this case.

After hearing the testimony from Dexter and his former attorney, the court noted that it had learned at the plea hearing that Dexter was taking a prescribed medication, Seroquel, for his diagnosed psychiatric condition. Accordingly, the court had questioned the defendant carefully at the plea hearing about his state of mind. Dexter had said he was not having difficulty understanding the proceedings, and the court found his answers appropriate to the questions asked. The court also noted that Dexter had said at the plea hearing that he'd "had sufficient time to make a decision that was in his best interests in accepting the plea." The court found that Dr. Barnett's report did "not indicate any issues which would affect his ability to knowingly and voluntarily enter into a plea." The court found "no merit" to the allegation that Dexter had been unable to understand the plea proceedings or had not entered the plea voluntarily based on his mental condition. The court denied the motion to withdraw plea, and Dexter appealed to our court after sentencing.

ANALYSIS

A guilty plea may be withdrawn before sentencing upon a showing of good cause and within the discretion of the district court. K.S.A. 2016 Supp. 22-3210(d). On appeal, the defendant must show that the trial court abused its discretion in denying the motion to withdraw the plea. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006); *State v. Ruiz*, 51 Kan. App. 2d 212, Syl. ¶ 1, 343 P.3d 544 (2015). A district court abuses its discretion if it makes an error of fact or law or if its discretionary judgment call is one that no reasonable person could agree with. *State v. Morrison*, 302 Kan. 804, 812, 359 P.3d 60 (2015); *Ruiz*, 51 Kan. App. 2d at 218.

In determining whether the defendant showed good cause, the district court must consider three factors, known as the *Edgar* factors (because they were announced in the *Edgar* decision): (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36; *Ruiz*, 51 Kan. App. 2d 212, Syl. ¶ 2.

The district court did not explicitly organize its analysis around these factors. Instead, it addressed point by point the issues Dexter had raised in his motion to withdraw the plea. But the court noted when it announced its ruling that it had "looked at the—what the Court has to consider as far as factors," stating that both sides knew "what factors the Court has to look at in determining whether the defendant's motion should be sustained or not sustained." We conclude that the district court considered the *Edgar* factors. We should also note that after the district court made its detailed ruling (which takes up 16 transcript pages), neither party asked for additional findings. In this circumstance, we presume that the district court made the factual findings necessary to support its decision. See *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015); *State v. Gaither*, 283 Kan. 671, Syl. ¶ 5, 156 P.3d 602 (2007).

We turn then to the *Edgar* factors.

*Whether the Defendant Was Represented by Competent Counsel*. The district court discussed Dexter's allegations that his trial attorney had provided inadequate representation. But on each of these points, the district court found no failure by Dexter's attorney. For example, Dexter had claimed that his trial attorney should have challenged whether venue was proper in Wyandotte County. The court noted that extensive testimony on this point had been presented at the preliminary hearing in which the court heard testimony about the crime. Based on that testimony, the court had concluded that the car Dexter was in when he committed the offense had returned to Wyandotte County before Dexter stabbed and cut his brother. In sum, the district court rejected each allegation of inadequate representation. The court impliedly found that Dexter was represented by competent counsel.

*Whether the Defendant Was Misled, Coerced, Mistreated, or Unfairly Taken Advantage of*. Dexter's coercion claim appears to be based on the assumption that he could have gone to trial with a defense of mental disease or defect and that, had this defense been successful, he might have been committed for a lengthy period of time to a state mental hospital. See K.S.A. 2016 Supp. 22-3428. Dexter suggests he entered the plea because he was afraid of that potential outcome. But the defendant's own testimony about why he took the plea actually cited more than coercion: "Because he—he said I could be in Larned State Hospital forever, you know. And, I mean, I thought that [taking the plea] was the right thing to do at the time." Dexter's attorney testified that both of them thought at the time that the plea agreement, which gave Dexter a 94-month reduction in his potential sentence, was in Dexter's best interest.

We should add a comment about whether the possibility of commitment to a state mental hospital would constitute coercion in any event. Long-term commitment to a state

mental hospital would have occurred only if Dexter would have successfully presented a defense of mental disease or defect and commitment was the appropriate result based on both the facts as determined by a jury and the law. The mere existence of a potential penalty or result that the defendant doesn't want does not amount to coercion. See *State v. Green*, 283 Kan. 531, 548, 153 P.3d 1216 (2007). Dexter could appropriately consider in making his plea decision the potential results in the case, and the evidence does not suggest that someone misled him about the potential results in an attempt to coerce him into taking the plea deal.

As for Dexter's mental state, reports had been submitted to the court from Dr. Barnett and from Dr. Shannon Sanders, a psychologist at Larned State Hospital. Neither recommended that Dexter needed to be placed in a mental hospital and, although the purpose of their evaluations wasn't the determination of competency to understand legal proceedings, neither suggested Dexter lacked that competence. We do not have a transcript of the plea hearing, but the district court reviewed it when making its ruling on the motion to withdraw Dexter's plea. The court specifically noted that, at the plea hearing, Dexter had "indicated that he had sufficient time to make a decision that was in his best interests in accepting the plea." The court also noted that there were "no complaints [at the plea hearing] regarding the counsel not filing or following up on this mental defect issue." The record supports a conclusion that Dexter was not misled, coerced, or unfairly taken advantage of.

*Whether the Plea Was Fairly and Understandingly Made*. The district court extensively discussed the evidence related to this factor since Dexter had been diagnosed with mental illness. The court noted that Dexter had "affirmatively indicated his mind was clear on the date of the plea," did not "indicate that his mental health issues affected his ability to enter a plea," and "denied the medicine [he was taking] caused any problems as far as his ability to understand." Dr. Barnett's report noted that Dexter was taking Seroquel when Dr. Barnett interviewed Dexter. (Dexter also reported at the plea hearing

6

that he was taking Seroquel.) Dr. Barnett noted that although Dexter's thought processes during the interview were "mildly illogical," they were "coherent." According to Dr. Barnett, Dexter said he no longer had hallucinations since he started taking the drug. Dr. Barnett also said Dexter appeared to need ongoing psychiatric medication, presumably Seroquel (as no other recommended drugs were noted by Dr. Barnett).

It's true, as Dexter notes on appeal, that Dr. Barnett diagnosed Dexter with schizophrenia (paranoid type), posttraumatic stress disorder, and depressive disorder. But a person isn't incompetent to participate in legal proceedings merely because he or she has some mental illness. The question is whether the defendant was able to understand the nature of the proceedings and to participate in a rational way in them. See K.S.A. 22-3301; *State v. Shopteese*, 283 Kan. 331, 340-41, 153 P.3d 1208 (2007); *State v. Vasquez*, 272 Kan. 692, 697-99, 36 P.3d 246 (2001).

The judge who ruled on Dexter's motion had personally observed Dexter at the plea hearing and reviewed the transcript of that hearing before ruling. In addition, the judge heard from both Dexter and his attorney. That attorney, Vincent Rivera, testified that Dexter helped in his defense and did not appear to have any problems understanding the terms of his plea. Rivera also testified that he didn't have any questions about Dexter's competency to participate in the proceedings. Combined with the district court's observations of the plea hearing itself, the record supports a conclusion that the plea was fairly and understandingly made.

In sum, while the district court organized its extensive oral ruling around the points made in Dexter's motion rather than the *Edgar* factors, we have no doubt that the court had those factors in mind and considered them. We do not find that the district court based its decision on any mistaken factual or legal premise, and we conclude that a reasonable person could agree with its decision to deny the motion to withdraw Dexter's guilty plea. The district court's judgment is therefore affirmed.

7